UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Ronald Ruffin *on behalf of himself and all others similarly situated*,<br><br>*Plaintiff,*<br><br>v.<br><br>Kirschenbaum & Phillips, P.C.;<br>LVNV Funding, LLC;<br>Resurgent Capital Services Limited Partnership, a/k/a Resurgent Capital Services LP, f/k/a Alegis Group Limited Partnership; Sherman Financial Group LLC.<br><br>*Defendants.* | Civil Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Ronald Ruffin ("Plaintiff"), by his attorneys, on behalf of himself and all others similarly situated, alleges as follows:

## NATURE OF ACTION

1. Plaintiff brings claims pursuant to the Fair Debt Collection Practice Act (FDCPA), 15 U.S.C. §1692 et seq., New York General Business Law § 349 and New York Judiciary Law § 487.

2. The instant lawsuit seeks to vindicate the rights of New York consumers who have been victimized by Defendants' unfair and deceptive policy and practice of representing in post-judgment collection communications that certain state court consumer collection affidavits of service are true and proper when Defendants know otherwise.

3. Specifically, Defendants know that the affidavits of service in question were created as part of a pervasive and systemic sewer service scheme (Defendant K&P having been a Respondent in an action brought by Chief Administrative Judge of the New York State Unified

1

Court System regarding the scheme), and also know that the owner of the process service company in question, William Singler of American Legal Process, pleaded guilty to felony scheming to defraud in connection with the falsification of thousands of such affidavits.

4. Defendants' misconduct is the result of both affirmative misrepresentations and material omissions in its collection communications.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

6. Declaratory relief is available per 28 U.S.C. §§ 2201 and 2202.

7. The Court has supplemental jurisdiction over state claims per 28 U.S.C. § 1367.

8. Venue is proper in this District per 28 U.S.C. § 1391, as the acts, omissions and transactions that give rise to this action occurred, in substantial part, in this District.

9. Venue is also proper in this district because Plaintiff lives in this District, Defendants conducts business in this District, and the injury occurred in this District.

## PARTIES

10. At all relevant times, Plaintiff Ronald Ruffin has resided in White Plains, New York.

11. Plaintiff is a "consumer" as that term is defined in the FDCPA and pursuant to New York General Business Law § 349.

12. Defendant Kirschenbaum & Phillips, P.C. ("K&P") is a high-volume debt collection law firm based in Farmingdale, New York.

13. K&P regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed and due to another, by the use of the mail, telephone, and other means of interstate commerce.

14. K&P was and is a "debt collector" as that term is defined in the FDCPA. 15 U.S.C § 1692a(6).

15. Defendant LVNV Funding ("LVNV") is a foreign limited liability company organized under the laws of the state of Delaware and likewise managed from the state of South Carolina.

16. LVNV is one of the country's largest purchasers of consumer debt, including large portfolios of consumer credit card debt.

17. LVNV regularly uses the mails, telephone, and other means of interstate commerce. interstate commerce in its business, the principal purpose of which is the collection of debts.

18. LVNV is a wholly owned subsidiary of Sherman Originator LLC which, in turn, is a wholly owned subsidiary of Defendant Sherman Financial Group LLC ("SFG"), discussed below.

19. Defendant Resurgent Capital Services Limited Partnership, a/k/a Resurgent Capital Services LP, f/k/a Alegis Group Limited Partnership ("Resurgent") is a limited partnership headquartered in South Carolina.

20. Resurgent, which acts as the master servicer for charged off consumer debt owned by Defendant LVNV, is 99% owned by Defendant SFG and 1% owned by SFG's subsidiary Alegis.

21. Resurgent was and is a "debt collector" as that term is defined in the FDCPA. 15 U.S.C § 1692a(6).

22. Resurgent regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed and due to another, by the use of the mail, telephone, and other means of interstate commerce.

23. Specifically, on information and belief, LVNV has no employees and Resurgent,

its master servicer, regularly takes a broad variety of collections on its behalf.

24. Defendant Sherman Financial Group ("SFG") is a foreign limited liability company organized under the laws of the state of Delaware and headquartered in South Carolina.

25. SFG has at all relevant times been the largest or one of the largest purchasers of charged of credit card debt in the country.

26. As discussed above, SFG in its own right and/or through its subsidiaries, owns and controls both LVNV and Resurgent.

27. SFG in its own right or by and through its various subsidiaries, regularly uses the mails and other instrumentalities of interstate commerce in its business, the principal purpose of which is the collection of debts.

28. SFG is a "debt collector" as that term is defined in the FDCPA.  15 U.S.C § 1692a(6).

29. SFG, LVNV and Resurgent are referred to herein as "the LVNV Defendants".

## FACTS

30. In 2005, Plaintiff was sued on an alleged debt in an action titled *LVNV Funding v. Ruffin* (Westchester Supreme, Index: 07-18038) ("the State Court Collection Action")

31. The State Court Collection Action was filed by Solomon & Solomon, P.C., which is not a defendant in the instant action.

32. The State Court Action alleged that Plaintiff breached a credit card agreement and, as a result, owed $1,854.25 plus statutory interest.

33. A default judgment for $2,858.32 was entered against Plaintiff on or about December 12, 2007 in the State Court Action

34. The Affidavit of Service in the State Court Action was sworn to by American Legal Process server Gene Gagliardi, and was notarized by the owner of American Legal Process, William Singler.

35. American Legal Process is infamous for having engaged in systemic sewer service resulting in default judgments in tens of thousands of New York state court collection actions.

36. The State of New York brought criminal suit against American Legal Process and Mr. Singler for this scheme in an action titled *Cuomo v. Zmod Process Corp., dba American Legal Process*, 4228-09 (Erie Supreme), in which the State alleged that Mr. Singler "persistently and repeatedly failed to serve New Yorkers in the manner prescribed by law, and have filed, or caused to be filed, thousands of false affidavits of service representing that service was proper." (hereafter, "the ALP Sewer Service Scheme")

37. Mr. Singler, ALP's owner, pleaded guilty in that action to felony scheming to defraud.

38. In May 2015, K&P became attorney of record in the State Court Action by means of a Consent To Change Attorneys' Stipulation.

39. In September 2019, Mr. Ruffin was served with an Income Execution notice dated September 5, 2019, by the Westchester County Sheriff's Civil Unit [hereafter, "the Notice"].

40. The Notice -- which encloses an income execution -- states that Mr. Ruffin is "require[d] to pay to the Westchester County Sheriff 10% of your gross wages" and offers Plaintiff the "opportunity to voluntarily pay" within 20 days.

41. The underlying Income Execution was dated July 24, 2019 and was signed by attorney Steven L. Rosenthal as representative of K&P.

42. The Income Execution states that the State Court Action judgment was "duly entered" and "direct[s]" Mr. Ruffin to "satisfy the judgment with interest together with your fees and expenses."

43. The Income Execution further states that Mr. Ruffin is "notified and commanded within 20 days to start paying" and that he must "continue paying . . . until the judgment with interest and the fees and expenses of this Income Execution are fully paid and satisfied.

44. Defendant K&P's signature block, listing seven different K&P attorneys immediately follows these statements.

45. K&P has at all relevant times been fully aware of the ALP Sewer Service Scheme, *i.e.* that ALP and Mr. Singler engaged in systemic sewer service and that tens of thousands of ALP affidavits were falsified as part of a policy and practice of manufacturing default judgments in New York state court consumer collection actions.

46. Indeed, K&P was named as a Respondent in *In the Matter of the Petition of Honorable Ann Pfau, Chief Administrative Judge of the New York State Unified Court System v. Forster & Garbus, et al.* (Erie Supreme), the focus of which was the ALP Sewer Service Scheme, and K&P entered into a Consent Order in that action.

47. The petitioner's submissions in the Pfau matter included a chart showing that ALP process servers' affidavits of service placed ALP's process servers as at two or more locations simultaneously in thousands of instances.

48. For example, chart showed process server Gagliardi (the process server in the State Court Action involving Mr. Ruffin) as having sworn on some 450 (four hundred and fifty) instances to being in "2 locations or more at [the] same time".

49. K&P is also aware that Mr. Singler pleaded guilty in connection with the ALP Sewer Service Scheme.

50. Mr. Singler's plea was not only widely reported at the time (see, *e.g.* New York Law Journal, 1/19/10, p. 1, column 3), but was also noted in court decisions in which K&P herein was counsel of record.

51. For example, and without limitation, K&P was counsel of record in *North Fork Bank v Porri*, 2011 N.Y. Slip Op. 50402 (N.Y. Dist. Ct. 2011), ("Kirschenbaum & Phillips for plaintiff"), in which the Court noted that "William Singler the owner of ALP has pled guilty to notarizing affidavits of service even though he knew the process servers had not made service in the manner described in the affidavits of service".

52. Similarly, K&P was counsel of record in *Velocity Invs., LLC v. McCaffrey*, which both described the ALP Sewer Service Scheme in detail and noted Singler's guilty plea:

> The Pfau action was the court system's response to the debt collection sewer service scandal of 2007 and 2008. The Pfau action was based upon allegations process servers used by ALP were making sewer service and preparing and executing false affidavits of service. When the defendants who had not been properly served did not appear, default judgments were entered.
>
> The petition in the Pfau action alleged William Singler, the owner of ALP, notarized in excess of 73,000 affidavits of service between January 1, 2007 and October 8, 2008. Many if not most of the affidavits of service were for service made upon the defendants pursuant to CPLR 308 (4) even though the process server had not affixed a copy of the summons and complaint to the door of the defendant's "actual place of business, dwelling place or usual place of abode" or mailed a copy of the summons and complaint to the defendant at the defendant's "last known residence or … actual place of business" as required by CPLR 308(4). The petition in the Pfau action further alleged the process servers used by ALP never made any effort to ascertain if the place to which service was being made was any of the statutorily permitted locations or the defendant's military status [FN: <u>Singler pleaded guilty to notarizing affidavits of service even though he knew the process servers had not made service  in the manner described in the affidavits of service.</u> (Process Server Pleads Guilty to Fraud, Faces One-Year Prison Term, NYLJ, Jan. 19, 2010, at 1, col 3.)]
>
> A review of the affidavits of service prepared by several process servers used by ALP and notarized by Singler established that several of the process servers had signed affidavits of service averring they had been at two different locations at the same time on the same day. The petition in the Pfau action alleges that the process server who made service in this action had signed affidavits of service swearing he

7

had been in two different locations on the same date at the same time on at least 10 different occasions.

*Velocity Invs., LLC v. McCaffrey*, 2011 NY Slip Op 21037, ¶¶ 2-3, 31 Misc. 3d 308, 311-12, 921 N.Y.S.2d 799, 801-02 (Dist. Ct.) (emphasis added).

53. By Order to Show Cause dated September 23, 2019, Mr. Ruffin, acting *pro se*, moved to vacate and dismiss the default judgment in the State Court Action, noting in his affidavit that (a) he had not been served and had not been aware of the lawsuit against him; (b) noting that although service was made upon a "co-tenant" according to the ALP affidavit of service, he had no co-tenant and there was no one at the duplex property fitting the description of the fictitious "co-tenant" listed in the affidavit; (c) setting forth the ALP Sewer Service Scheme and Singler's guilty plea.

54. By Affirmation in Opposition dated October 23, 2019, K&P opposed the Order to Show Cause, stating *inter alia*, that "Defendant was served with a copy of the Summons and Verified Complaint in this matter by service upon a person of suitable age and discretion" and that "another copy of the Summons and Verified Complaint was mailed to the Defendant by the process server on October 01, 2007."

55. K&P cited to the ALP affidavit of service and relied upon the proposition that "it is well established law that the affidavit of a process server is prima facie evidence of proper service".

56. Notably, K&P did not claim in its opposition that it had undertaken any independent investigation whatever regarding the statements set forth in the ALP affidavit of service at issue in the State Court Action such that it had some basis to believe that the affidavit in the State Court Action was an exception to the pervasive fraud at ALP, and Singler's confirmed pattern and practice of mass generation of perjured affidavits, of which K&P was fully aware.

57. To the contrary, K&P – fully aware of the Sewer Service Scheme and Singler's conviction – urged the State Court to accept the documents as "prima facie evidence of proper service".

58. Upon information and belief, this is a stock, boilerplate response that K&P repeats in cases in which *pro se* litigants challenge service involving ALP affidavits.

59. K&P's papers also incorrectly asserted that "in addition to showing that the default was excusable, the [state court] Defendant must present an affidavit made by a person with knowledge of the facts that indicates a meritorious defense" and urged denial of the Order to Show Cause on this basis.

60. The Opposition Papers conclude that "[i]n the absence of any allegation of either an excusable default or a meritorious defense, the instant motion is completely without merit and should be denied in all respects."

61. By Decision & Order dated December 6, 2019, the Hon. Joan B. Lefkowitz, granted Mr. Ruffin's motion, vacated the judgment and dismissed the action, stating *inter alia*, "Defendant established the court lacks jurisdiction over him by demonstrating he was not served with the summons and complaint. Defendant submitted his affidavit which sets forth sufficient facts, including the conviction of the process server for filing false affidavits of service, to refute the statements made by the process server in his affidavit of service."

62. Upon information and belief, K&P regularly issues and/or causes to be issued thousands post-judgment communications seeking to collect upon judgments in which ALP was the process server.

63. Upon information and belief, K&P is attorney of record in each of these actions.

64. K&P knows that the affidavits of service used to procure these judgments were routinely and pervasively falsified and that the owner of ALP has pleaded guilty in connection with falsification of thousands of such affidavits.

65. Notwithstanding this knowledge, K&P has not notified the Courts in these actions that it has no good faith basis to believe that the affidavits are proper.

66. To the contrary, K&P continues to represent in its post-judgment collection communications directly or by implication, that the underlying affidavits of service are in all ways proper.

67. In short, K&P has been on notice for over a decade of the fraudulent practices at ALP and that fraud with regard to these affidavits was systemic and pervasive but has nonetheless continued to represent them to consumers, Courts and others as truthful and unproblematic.

68. When faced with Orders to Show Cause regarding vacatur of judgments obtained by means of ALP judgments, K&P doubles down, knowingly misrepresenting the law and, without reference to the ALP Sewer Service Scheme or its knowledge of Singler's guilty plea, urging the Court to rely upon the affidavits of service that it has every reason to believe are perjured.

69. Upon information and belief, K&P has not undertaken any independent investigation with regard to the ALP affidavits and this despite the fact that it is attorney of record in the state court actions and knows of a fraudulent document was filed therein.

70. This is so even when, as in Mr. Ruffin's case, the consumer alleges lack of service.

71. In engaging in the misconduct set forth herein, K&P has, at all times, been acting within the scope of its authority.

72. As such, its knowledge of the ALP Sewer Service Scheme and Singler's guilty plea is imputed to the LVNV Defendants upon whose behalf K&P was acting.

73. The LVNV Defendants are liable with regard to all unlawful communications made by K&P on behalf of the LVNV Defendants.

## CLASS ALLEGATIONS

74. The plaintiff, Ronald Ruffin, brings this action on behalf of not only, but also on behalf of a class of all other persons similarly situated, pursuant to Fed. R. Civ. P. Rule 23.

75. Plaintiff seeks to represent a Class ("the K&P Class"), defined as follows:

    a. All natural persons;

    b. to whom K&P directly or indirectly sent boilerplate post-judgment collection communications;

    c. seeking to collect upon a New York state court default judgment;

    d. in which the underlying affidavit of service was signed or notarized by William Singler or any other ALP process server; and

    e. which state or imply, affirmatively or by omission, that the ALP affidavits of service used to obtain the judgments were proper, lawful and/or accurate.

76. Plaintiff also seeks to represent a Class ("the LVNV Class"), defined as follows:

    a. All individuals meeting the requirements of the K&P class with regard to whom, K&P directly or indirectly sent a post-judgment collection communication on behalf of one or more of the LVNV Defendants.

77. Each of the two classes above (the K&P Class and the LVNV Class) is divided into two subclasses:

    a. an FDCPA subclass, which consists of all those who meet the Class criteria set forth above and who, in addition, were sent said communications within one year of the initiation of the instant class action, and

    b. a NYSGBL 349 subclass, which shall consist of all those who meet the Class criteria set forth above and who, in addition, were sent said communications within three years of the initiation of the instant class action.

78. Excluded from the Class are:

    a. Anyone against whom service was alleged to have been made by means of personal, in-hand delivery pursuant to CPLR 308(1);

    b. anyone employed by counsel for Plaintiff in this action; and

    c. any Judge to whom this case is assigned, as well as his or her immediate family and staff.

*Numerosity*

79. The debt collection communications at issue in this case are boilerplate documents whose language does not materially vary from one consumer to the next, and which, upon information and belief, were sent by Defendant, a high-volume debt collector, to thousands of consumers.

80. Upon information and belief, the Class (including each SubClass) includes thousands of members and is sufficiently numerous that joinder of all members is impractical.

81. Although the exact number of Class members and their addresses are unknown to Plaintiff, they are readily ascertainable from Defendants' records.

*Existence and Predominance of Common Questions*

82. Common questions of law and fact exist as to Plaintiff and all members of the Class and predominate over questions affecting only individual Class members.

83. These questions include:

    a. Whether Defendants' policy and practice, as outlined above, violated the FDCPA;

    b.   Whether Defendants' policy and practice, as outlined above, also violated GBL § 349;

    c.   Whether Defendants' policy and practice, as outlined above, also violated New York Judiciary Law § 487;

    d.   Whether Plaintiff and the other Class members are entitled to statutory damages, actual damages, costs and attorney's fees under the FDCPA;

    e.   Whether Plaintiff and the other Class members are entitled to actual damages, damages of $50 each, punitive damages, treble damages, costs and attorney's fees under GBL 349; and

    f.   Whether Plaintiff and other Class members are entitled to treble damages and costs under New York Judiciary Law § 487.

*Typicality*

84.    Plaintiff's claims are typical of the claims of the K&P Class because, among other things, Plaintiff is:

    a.   A natural person;

    b.   to whom K&P issued boilerplate post-judgment collection communication;

    c.   seeking to collect upon a New York state court default judgment;

    d.   in which the underlying affidavit of service was signed or notarized by William Singler or any other ALP process server; and

    e.   which state or imply, affirmatively or by omission, that the ALP affidavits of service used to obtain the judgments were proper, lawful and/or accurate.

85.    Thus, Plaintiff's claims—based on the same boilerplate misstatements as the claims of all other K&P members—are typical of the claims of the K&P Class.

86.    Plaintiff's claims are also typical of the LVNV Class.

87. Specifically, K&P sent a post-judgment collection communication regarding Mr. Ruffin's account on behalf of one or more of the LVNV Defendants.

88. Put differently, all of the claims are based on the same factual and legal theories and the Plaintiff, together with each Class member, has been subjected to the same false, deceptive and unfair communications and acts by Defendants.

*Adequacy*

89. Plaintiff will fairly and adequately represent the interests of the class members. interests do not conflict with the interests of the members of the Class seeks to represent.

90. Plaintiff has retained counsel experienced in prosecuting class actions and in consumer protection matters. There is no reason why this Plaintiff and counsel will not vigorously pursue this matter.

*Superiority*

91. The class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein.

92. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.

93. Further, it would be virtually impossible for the members of the Class effectively to individually redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, the court system could not.

94. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.

95. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

96. In the alternative, the Class may be certified because:

   a. the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendants;

   b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

   c. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

**COUNT I**
**(Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*)**

97. Plaintiff hereby restates, realleges, and incorporates by reference all foregoing paragraphs.

98. Congress enacted the Fair Debt Collection Practices Act to stop "the use of abusive, deceptive and unfair collection practices by many debt collectors." 15 U.S.C § 1692(a).

99. The FDCPA is remedial in nature and liberally construed.

100. A debt collector may also not "use unfair or unconscionable means to collect any debt." 15 U.S.C. § 1692f.

101. A debt collector may not "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e.

102. Defendants violated the FDCPA by representing affirmatively or by material omission to the Plaintiff and the other Class Members, as well as to the Courts and other third parties that the ALP affidavits true and proper when they had every reason to believe that the affidavits were perjured and fraudulent.

103. The collection communications in question are boilerplate documents.

104. These acts and omissions violate 15 U.S.C. §§ 1692f, 1692e, 1692e(2)(A), and 1692e(10).

105. Defendants' unfair and deceptive collection practices were willful, intentional and sustained, and have caused Plaintiff and all others similarly situated to suffer cognizable harm.

106. As a result of these violations, Plaintiff and the putative class are entitled to statutory damages, actual damages, costs and attorneys' fees pursuant to 15 U.S.C. § 1692k.

## COUNT II
### (New York State General Business Law § 349)

107. Plaintiff hereby restates, realleges, and incorporates by reference all foregoing paragraphs.

108. Each of the deceptive acts and practices set forth above, including but not limited to each deceptive act and practice set forth in Count I was committed in the conduct of business, trade, commerce or the furnishing of a service in this state and constituted a violation of New York General Business Law § 349 independent of whether it also constituted a violation of any other law.

109. Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public.

110. This false and deceptive conduct impairs the rights of consumers, inducing them to make payments they would not make if fully informed of their rights.

111. Plaintiff and all others similarly situated have been damaged thereby.

112. As a result of Defendants' violations of § 349, Plaintiff and each other member of the Class are entitled to declaratory judgment; an injunction against the offending conduct, damages in the amount of $50 or his or her actual damages, treble damages, punitive damages, costs and attorneys' fees.

## COUNT III
### (New York Judiciary Law § 487)

113. Plaintiff hereby restates, realleges, and incorporates by reference all foregoing paragraphs.

114. Defendants' conduct occurred in actions in which it was attorney of record.

115. Defendants' conduct, described above, constitutes deceit or collusion.

116. Defendants' conduct also constitutes consent to deceit or collusion, *i.e.* consent to ALP's deceit and consent to the collusion between ALP's process servers and ALP's owner and serial false notary, Mr. Singler.

117. Defendants acted with intent to deceive consumers and the court.

118. Defendants' conduct was therefore in violation of Judiciary Law § 487.

119. Plaintiff and the Class have been injured thereby.

120. As a result of Defendants' violations of New York Judiciary Law § 487, Plaintiff and each other member of the Class are entitled to declaratory judgment; an injunction against the offending conduct, actual damages, treble damages, and costs.

**WHEREFORE** plaintiff and members of the class respectfully request that this Court award:

A. An order certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel;

B. A judgment declaring that Defendants have committed the violations of law alleged in this action;

C. Statutory, Actual, Treble and Punitive Damages;

D. Injunction of the offending conduct;

E. An order awarding disbursements, costs, and attorneys' fees; and

F. Such other and further relief that may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated: July 14, 2020
        New York, NY

Respectfully,

**SCHLANGER LAW GROUP LLP**

*/s/ Daniel A. Schlanger*
Daniel A. Schlanger
80 Broad Street, Suite 1301
New York, NY 10004
T. (212) 500-6114
F. (646) 612-7996
dschlanger@consumerprotection.net


**HUDSON VALLEY JUSTICE CENTER**

*/s/Jason Mays*
Jason Mays
19 Court Street, Suite 204
White Plains, NY 10601
T. (914) 308-3490
JMays@HVJC.ORG